UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Ginger Lakey,

    Plaintiff,

v.                                                Case No. 17-10425

Elite School Management et al.,        Sean F. Cox
                                                  United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, a former administrative assistant, has sued three Defendants–her former boss, the charter school where she worked, and the company that managed the school. She alleges that her former boss sexually harassed her. Defendants have moved for partial summary judgment, arguing that the school was not Plaintiff's employer under Title VII and that her ELCRA claims are barred by a contractual statute of limitations.

Discovery has concluded and Defendants has moved for summary judgment. For the reasons below, the Court shall grant their motion in part and deny it in part. The Court shall grant summary judgment to Defendants on Plaintiff's ELCRA claim because it is time-barred. But the Court shall deny the motion as to her Title VII claim because genuine issues of material fact exist for trial.

## BACKGROUND

Elite School Management is a limited liability company that manages charter school operations. Def. Stmt. of Undisputed Facts, ¶ 1. It employs more than 15 employees. Pl. Ex. 2.

1

Elite is owned by Maurice Evans, the company's CEO, and was founded in 2013. Def. Stmt., ¶¶ 2, 7; Evans Dep., p. 51. In a 2017 report filed with the State of Michigan, Evans is listed as the company's president, secretary, treasurer, and director. Pl. Ex. 4. Before founding Elite, Evans was one of the founding board members of the charter school Detroit Service Learning Academy. Evans Dep., p. 58. DSLA is governed by a volunteer Board of Education. Def. Ex. 4. Although Evans is no longer a board member, Evans Dep., p. 58, he now serves as the Academy's Chief Administrative Officer, giving him general administrative control of the Academy. Def. Stmt., ¶ 8; Def. Rep. Ex. 1.

In 2013, Elite began managing DSLA. Def. Stmt., ¶¶ 3, 9. Elite maintains an office at the school and is responsible for hiring its full-time teachers and other personnel. Evans Dep., p. 51, 55; Def. Rep. Ex. 1. The Academy itself does not employ any personnel and the Board does not make employment decisions. Evans Dep., p. 131; Def. Ex. 4. But the Board has some degree of authority over employees–the Elite School Management Employee Handbook states that staff behavior will be governed by policies and procedures set forth by Elite and by the DSLA Board of Directors. Pl. Ex. 7. The responsibility for employment decisions, however, rested with Evans and other Elite employees. Evans Dep., p. 55-56. Indeed, as to Plaintiff, Evans told her that he was the only person who could fire her. Lakey Dep., p. 176.

Plaintiff Ginger Lakey had applied to work at DSLA in July 2014. Pl. Dep., p. 77. Elite hired her as an administrative assistant and initially assigned her to the Academy to support the assistant principal, starting in August 2014. Def. Stmt., ¶¶ 22-23. A few months later, on October 21, 2014, Plaintiff signed an acknowledgment of her receipt of the Elite Employee Handbook. *Id*. at ¶ 24. That same day, she signed an agreement to shorten the limitations period

for bringing any action or suit related to her employment to 180 days. *Id*. at ¶ 25.

Around this time, Elite also reassigned Plaintiff to provide administrative support directly to Evans and his Chief of Staff. *Id*. at ¶ 26. This led to Plaintiff relocating from one office in the Academy to an Elite office also located in the Academy. Pl. Dep., p. 89. Despite the reassignment, Plaintiff continued to perform several duties for DSLA, including: serving as the recording secretary; serving as the compliance officer; acting as a liaison between DSLA and Lake Superior State University; and preparing correspondence on Academy letterhead, which would be approved by Evans or Orlando Woods, the president of the DSLA Board. Pl. Ex. 2. She also performed duties directly for Board members, including: ordering food for Board member events; contacting Board members about meetings; and making phone calls on behalf of Woods and other Board members. *Id*.

Shortly after Plaintiff began working for Elite, Evans began to sexually harass her. Pl. Dep., p. 175-76. Plaintiff alleges numerous instances of harassment by Evans. Eventually, Elite terminated Plaintiff's employment in July 2015. Def. Stmt., ¶ 30.

On February 9, 2017, Plaintiff sued Elite, the Academy, and Evans, alleging claims for sexual harassment and discrimination, in violation of Title VII and Michigan's Elliott Larsen Civil Rights Act (Doc. # 1). Defendants have moved for partial summary judgment (Doc. # 36) and Plaintiff has responded (Doc. # 39).[1] The Court held a hearing on August 9, 2018.

**STANDARD OF DECISION**

Summary judgment will be granted when no genuine issue of material fact exists.

---

[1] Defendants have not moved for summary judgment on Plaintiff's Title VII claim against Elite Management.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

Defendants argue that Plaintiff's claims against DSLA should be dismissed because it was never Plaintiff's employer. They also argue that Plaintiff's ELCRA claim is untimely.[2] The Court shall address each argument in turn.

### I. Whether DSLA was Plaintiff's Employer Under Title VII

For DSLA to be liable under Title VII, Plaintiff must show that it was her "employer." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997). DSLA argues that it does not qualify as Plaintiff's "employer" because it was not her formal employer and because it does not meet the numerosity requirement. *See* 42 U.S.C. § 2000e(b) (providing that an "employer" must have at least fifteen employees on each working day for twenty or more calendar weeks in the year the alleged discrimination occurred or in the previous year). For her part, Plaintiff does not appear to dispute that DSLA itself does not have 15 employees.

Even so, this is not automatically fatal to her claim. "Entities that do not otherwise meet the definition of employer (either because they do not formally employ the plaintiff or do not meet the numerosity requirement) may still face liability through the single-employer or

---

[2] Additionally, Defendants argue that Plaintiff's Title VII claim against Evans should be dismissed because individuals cannot be liable under Title VII. *See Wathen v. Gen. Electric Co.*, 115 F.3d 400, 404 (6th Cir. 1997). But, as indicated by Plaintiff at the hearing, she did not bring a Title VII claim against Evans.

4

joint-employer doctrines." *Sanford v. Main Street Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011). Under these doctrines, an entity that is not the plaintiff's formal employer may be treated as such and the numerosity requirement may be satisfied by aggregating the employees of the entities at issue. *Id*.

Although Plaintiff argues DSLA can be considered her employer under either doctrine, it is only necessary to address the single employer doctrine. Under this doctrine, two companies may be considered "so interrelated that they constitute a single employer" subject to liability under Title VII. *Swallows*, 128 F.3d at 993. To determine whether to treat two entities as a single employer, the Court examines four factors: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id*. at 993-94. None of the factors are conclusive and all four need not be met in every case. *Id*. at 994. But control over labor relations is a central concern. *Id*.

Applying these factors here, a reasonable jury could first find that there is sufficient indicia of interrelation of operations. Plaintiff worked in an Elite office physically located inside the Academy. While there, she performed substantial duties for DSLA, including some directly on the behalf of Board members. And, a reasonable jury could infer that the two entities had common record keeping; after all, DSLA had no employees of its own to keep separate records.

There is also evidence of common management. Evans is the CEO of Elite and the CAO of DSLA. Although some degree of overlap in management may not satisfy this factor, *see EEOC v. Wooster Brush Co. Employees' Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984) (finding

5

no common management even though the President and CEO of one entity served on the board of directors of a second entity), there is a question of fact as to the significance of Evans' role at DSLA. At a minimum, he is the founder of the school who continues to hold a significant executive role. Given Evans' significant presence in the management of both Elite and DSLA, a reasonable jury could conclude that this factor is satisfied. *See Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir. 1983) (finding common management when the president of one company was the chairman of the board of directors of another), abrogated on other grounds by *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (finding common management when both companies shared a common president).

Next is the question of centralized control of labor relations and personnel–the "central concern." Evans had a prominent executive role with Elite and DSLA and he possessed the "key powers" of hiring and firing. *See Swallows*, 128 F.3d at 995. From this, a reasonable jury could conclude that Evans had centralized control of labor relations and personnel across both entities.

Finally, as to the fourth factor, if "neither of the entities is a sham then the fourth test is not met." *Wooster Brush*, 727 F.2d at 572. But although Plaintiff has not shown that either entity is a sham, the absence of that showing is not dispositive. *Swallows*, 128 F.3d at 994.

Instead, considering the factors together, the Court finds that genuine issues of material fact exist as to whether Elite and DSLA were "so interrelated" that they constitute a single employer. They shared a prominent executive who had control of labor relations; indeed, according to Plaintiff, Evans said that he was the only one who could terminate her. On these facts, a reasonable jury could find DSLA liable under the single employer doctrine. Thus, the

6

Court shall deny the motion for summary judgment on Count One.[3]

## II. Whether Plaintiff's ELCRA Claim is Time Barred

Defendants also argue that Plaintiff's ELCRA claim, which she filed over 18 months after her termination, is time barred by the 180-day contractual limitations period that she agreed to.[4]

Contractual six-month limitations, like this one, have been held to be reasonable. *See Myers v. Western-Southern Life Ins. Co.* 849 F.2d 259, 262 (6th Cir. 1988); *Wright v. DaimlerChrysler Corp.*, 220 F.Supp.2d 832, 840 (E.D. Mich. 2002). Indeed, Plaintiff does not argue otherwise. Instead, she contends that Defendants have waived this affirmative defense.

A party must affirmatively state any affirmative defense when responding to a pleading. Fed. R. Civ. P. 8(c)(1). An affirmative defense may be pleaded in general terms and is sufficient so long as it gives the plaintiff "fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006). Usually, "failure to plead an affirmative defense results in a waiver of that defense." *Old Line Life Ins. Co. of America v. Garcia*, 418 F.3d 546, 550 (6th Cir. 2005).

Here, Defendants' answers stated that "Plaintiff's claims are barred, in whole or in part, under applicable limitations period(s)." The Sixth Circuit has held that general statements like this one sufficiently plead an affirmative defense. *See Montgomery v. Wyeth*, 580 F.3d 455, 467-68 (6th Cir. 2009) ("Plaintiff's causes of action are barred in whole or in part by the applicable

---

[3] Because the Court concludes that the single-employer doctrine applies, it is unnecessary to address whether the joint-employer doctrine also applies.

[4] Because Plaintiff filed an EEOC charge on September 9, 2015, Defendants have not moved to dismiss her Title VII claim as time barred.

statutes of limitations and repose."); *Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th Cir. 1998) ("Plaintiffs' claims are barred by the doctrine of res judicata."). Likewise, courts in this district have upheld general assertions of limitations defenses. *See Exclusively Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp.*, 2014 WL 4715532 (E.D. Mich. 2014); *Dickson v. Township of Novesta*, 2006 WL 3240695 (E.D. Mich. 2006). Defendants' stated affirmative defense is no different. Indeed, having signed the agreement, Plaintiff was already on notice of the shortened limitations period. And when Defendants then pleaded that her claims were barred, in whole or in part, by applicable limitations periods, they gave her fair notice of the nature of their defense. That is all Rule 8 requires.[5]

In sum, Defendants sufficiently pleaded their contractual limitations defense. And it is meritorious; Plaintiff did not bring her ELCRA claim within the six-month contractual limitations period and she has not argued that the limitations period was otherwise unreasonable. Thus, the Court shall grant Defendants' motion for summary judgment as to Count Two because it is barred by the contractually shortened limitations period.[6]

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court GRANTS summary judgment in Defendants' favor on Plaintiff's ELCRA claim because it is time barred. But the

---

[5] Plaintiff claims that she was prejudiced because Defendants belatedly provided her a copy of the limitations period agreement. But Plaintiff did not request her personnel file and any employment agreements from Defendants until November 10, 2016, about 16 months after they terminated her employment. By that time, the six-months limitations period had come and gone.

[6] Thus, it is unnecessary to address Defendants' argument that DSLA was not Plaintiff's employer under the ELCRA.

Court DENIES the motion as to her Title VII claim because genuine issues of material fact exist for trial.

    IT IS SO ORDERED.

                                              s/Sean F. Cox  
                                              Sean F. Cox  
                                              United States District Judge

Dated: August 21, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 21, 2018, by electronic and/or ordinary mail.

                                              s/Jennifer McCoy  
                                              Case Manager